**Gretchen OEHLER v. Donald J. PYSKACEK, Vermont National Bank and Jack W. Milton**

[758 A.2d 786]

No. 99-189

July 27, 2000. In this appeal, defendant-appellant Donald Pyskacek and plaintiff-cross-appellant Gretchen Oehler (the parties), who consented to reference of

disputed issues in a partnership accounting to a court appointed master in the action below, jointly seek reversal of a Windham Superior Court order that required them to pay the master's fees and expenses. We affirm.

The initial dispute between plaintiff and defendant involved a civil action for partition of real estate and a counterclaim seeking dissolution of their partnership. After a two-day hearing, the court ordered that the case proceed as a partnership dissolution. In March 1998, after announcing its decision, the court asked the parties to consider submitting the partnership accounting to a court-appointed master. The court ordered the parties to confer with each other to determine whether they would consent to reference to a court-appointed master pursuant to V.R.C.P. 53, and to notify the court of their collective decision on or before April 17, 1998.

Defendant's attorney notified the court on April 17, 1998 that the parties had agreed to reference the matter to an identified and available master. At a May 1, 1998 hearing, the court asked defendant's attorney to submit a proposed reference order for the master. Defendant's attorney submitted a proposed reference order on May 29, 1998, which cited V.R.C.P. 53 and stated that the master "shall set a time and place for hearing, to be held no later than June 19, 1998." The proposed order concluded by addressing the master's costs: "The compensation to be allowed to the master shall be fixed by the court, and such compensation and necessary expenses incurred by the master as allowed by the court, shall be paid by the State as provided by law."

Although the court had not yet authorized the reference or formally appointed the master, the parties scheduled a hearing for June 11, 1998. At the request of the agreed-upon master, who did not want to begin the hearing until he was officially appointed by the court, defendant's attor-

ney contacted the court on or about June 8, 1998, regarding the status of the reference order. On June 10, 1998, the court faxed its reference order to the parties. The court's order tracked the proposed order, including its reference to V.R.C.P. 53 and the June 19, 1998 hearing deadline, with one critical difference. In a handwritten note, the court added a condition to the provision regarding the master's compensation:

> The compensation to be allowed to the master shall be fixed by the court, and such compensation and necessary expenses incurred by the master as allowed by the court, shall be paid by the State as provided by law. *If there are insufficient funds budgeted for this by the State the court will allocate compensation between the parties as justice requires.*

(Emphasis added.)

The parties did not move for reconsideration of the condition the court imposed on their proposed order. Nor did they, when the master's hearing commenced on June 11, 1998, preserve any objection to it on the record. The hearings proceeded over several days without any notice to the court that the parties objected to the terms of the reference order. When the parties asked the court in a July 21, 1998 stipulation to extend the time for the master's report because the hearings were lasting longer than anticipated, they made no objection to any provision of the reference order.

After several hearing dates, the evidence was closed, and the parties submitted proposed findings of fact and conclusions of law to the master in August 1998. In October 1998, before the master issued his decision, the parties settled their dispute. One of the provisions addressed the master's compensation:

> [I]n the event the Windham Superior Court directs the parties

to pay all or any portion of the fees of the . . . court-appointed master in connection with the accounting proceeding before the master, the parties shall each pay one-half of such fees, or portion thereof, reserving to each party the right to contest and/or appeal, individually or jointly, any such order by the court.

The parties evidently forwarded the master's bill to the court, and the court requested the parties inform it of the matter's status before it submitted the bill to the court administrator. In a December 1, 1998 stipulation, the parties stated that they had settled their dispute and that, pursuant to V.R.C.P. 53 the court "may allow" compensation for the master "to be paid by the State."

On December 29, 1998, the court informed the parties that, according to the court administrator, "there are no funds allocated in the judiciary's budget for the payment of masters appointed by the court, notwithstanding the provisions of V.R.C.P. 53(a) and 32 V.S.A. § 1758." The parties then filed a joint motion for an order requiring the State to compensate the master. The court denied the motion and ordered the parties to each pay one-half of the master's fees and expenses, noting that the parties had reserved their right to appeal this determination in the settlement agreement. The parties then appealed jointly to this Court.

The parties contend that the issue presented by the facts of this case is whether the State of Vermont must pay the fees and expenses of court-appointed masters. The State, arguing as amicus curiae pursuant to V.R.A.P. 29, contends that the issue is much narrower; that is, whether the court has the authority to require parties who have voluntarily elected to utilize a master in resolving their dispute to bear the costs of the master's proceedings. We agree with the State that it is the latter rather than former issue that is before us and conclude that on the facts of this case, the trial court's order requiring the parties to bear the costs of the master was proper.

We note at the outset that this was not a case in which the parties were compelled to utilize a master. Indeed, the court's order directing the parties to consider whether they would *consent* to a master could not be more explicit:

It is further ORDERED that the parties shall confer with each other through their respective attorneys and shall notify the court on or before April 17, 1998, *whether they will consent* to reference of this matter to a court appointed master pursuant to V.R.C.P. 53(b) for determination of disputed issues with regard to partnership accounting. *If the parties consent* to such reference, the parties shall advise the court by such a date of a mutually acceptable master or, in the alternative, each party shall provide the court with three or more names of individuals acceptable to such party for appointment as master.

(Emphasis added.) Nor could there be a clearer expression of the parties' understanding that the reference to the master was contingent upon their voluntary agreement. On behalf of the parties, defendant's attorney notified the court by letter of April 17, 1998, that "the parties *will consent* to reference of this matter to a court appointed master for determination of disputed issues with regard to the partnership accounting." (Emphasis added.) Moreover, the court incorporated verbatim the language used by defendant's attorney in the proposed reference order: *"Based upon the agreement of the plaintiff and the defendant Pyskacek*, and pursuant to V.R.C.P. 53, the court hereby

appoints Raymond P. Perra, Esq., . . . to serve as master in the above-entitled action, for the purpose of taking evidence and making findings of fact and conclusions of law with regard to the partnership accounting." (Emphasis added.)

We emphasize the parties' consent to the use of a master because the essence of their argument on appeal is that subsequent events rendered their consent "involuntary." The parties first claim that they and the court were implicitly, if not explicitly, in accord that V.R.C.P. 53 required payment by the State of the master's fees and expenses. The difficulty with the parties' assertion of this claim is that irrespective of whether the court and the parties had the same view of the application of V.R.C.P. 53 at the time reference to a master was first discussed, the reference order promulgated by the court contained an unmistakably significant caveat to whatever expectation may have existed as to the State's capacity or the judicial branch's authority to pay the master's costs. Indeed, the fact that it was the judge's handwritten addition to the typed order, prepared by the parties and otherwise unaltered, revealed rather than concealed its significance. The judge wrote: "If there are insufficient funds budgeted for this by the State the court will allocate compensation between the parties as justice requires."

The parties cannot reasonably maintain that they were unaware of the court's insertion of this language into the reference order, nor can they argue that it is irrelevant to the issue of whether their subsequent use of the master was voluntarily undertaken with notice that they may be liable for the master's fees and expenses. On appeal, the parties concede notice but contend that the relevance of the quoted language of the reference order is mitigated by the circumstances they faced.

The parties' continuing conduct does not support this contention. The record shows that the parties (1) scheduled and made arrangements for the June 11, 1998 hearing before the court issued its reference order; (2) did not postpone the hearing or even note an objection to the court's reference order once the hearing commenced; and (3) failed to inquire or otherwise alert the court, in their stipulation for an extension of time, that they were concerned about the reference order's compensation caveat, even though the need for more time was presumably proportional to increased costs of the master's services. The important fact is not, as the parties argue, that "neither party here indicated his or her acceptance of the court's addition to the proposed reference order," but rather that neither party indicated his or her objection to it. The parties now claim that they were "doing the court a favor" by "conducting time consuming litigation outside of court." Even if we accept the parties' characterization of their motive for utilizing a master, it is difficult to find the benefit for either the judicial system or the litigants where parties "avail [themselves] of the benefit of [an] order and [then] deny its validity." *Spaulding & Kimball Co. v. Aetna Chemical Co.*, 98 Vt. 169, 174, 126 A. 588, 590 (1924).

It may be, as the parties argue, that the failure to impose the costs of the master upon the State in the circumstances of this case will deter litigants from the use of the master. To the extent the payment of masters depends upon the appropriation of public funds, the parties' argument must necessarily be addressed to the Legislature. See *Bouvier v. Wilson*, 139 Vt. 494, 499, 431 A.2d 465, 468 (1981) (rejecting plaintiffs' argument that State was required to adequately fund general assistance program of Department of Social Welfare because such "shortcoming is only remediable by the Legislature"). We hold only that on the facts of this case, the parties cannot be said to have been unfairly burdened by the imposition of the

costs in a matter to which they voluntarily consented to the utilization of a master.

*Affirmed.*